20 CV 10578

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____ X

**POONAM KESWANI,**                                      Civil Action No:

**Plaintiff,**

Vs.

**HARJIT SINGH ATHWAL**
c/o 401 WASHINGTON STREET
TOMS RIVER, NJ 08753- 6742
**MATTHEW A. WURGAFT**
201 WASHINGTON STREET
NEWARK, NEW JERSEY 07102
**KRAVIS & WURGAFT, P.C.**
201 WASHINGTON STREET
NEWARK, NEW JERSEY 07102
**TREASURES LONDON LIMITED**
c/o 401 WASHINGTON STREET
TOMS RIVER, NJ 08753- 6742
**ANDREW KRAVIS**
201 WASHINGTON STREET
NEWARK, NEW JERSEY 07102
**Defendant(s).**
_____ X

*CIVIL COMPLAINT WITH JURY DEMAND*

## CIVIL COMPLAINT

Plaintiff, Poonam Keswani, on behalf of herself appears now and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

      1692 *et esq*, to secure permanent injunctive relief and other equitable relief, including

      restitution, and disgorgement, against defendants for engaging in unfair or deceptive

      acts or practices in violation of the FDCPA, 15 U.S.C. § 1692.

2.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331,

       1337(a) and 1367,  28 U.S. Code § 1332

3.    Venue is proper in the United States District Court because all parties may be found

       here.

## DEFINITIONS

4.    As used in reference to the FDCPA, the terms "creditor," debt," and "debt collector," are

       defined in § 803 of the FDCPA, 15 U.S.C. § 1692A.

## THE PARTIES

5.    The FDCPA, 15 U.S.C. § 1692 which prohibits certain debt collection practices provides

       for the initiation of court proceedings to enjoin violations of the FDCPA and to secure such

       equitable relief as may be appropriate in each case.

6.    Defendant HARJIT SINGH ATHWAL (hereinafter "**HARJIT**") upon information and

       belief is a Solicitor and citizen of the United Kingdom, and director of defendant,

       TREASURES LONDON  LIMITED.  Upon further information and belief, Harjit conducts

       business in the United States through a registered agent, Edward  F. Bezdecki.  Defendant

       Harjit, among other things, in his business practices lends money and secures loans for

       corporate and non-corporate clients.   As such, the debts that Harjit deals with can often be

       in default and he regularly attempts to collect including, but not limited to consumer debts

       directly or through agents/assignees using the mails, telephone and judicial process.

7. Upon information and belief, Defendant, TREASURES LONDON LIMITED (hereinafter **"TLL"**), (Company Number 10595313) , is a fully owned company based in the United Kingdom at the Principal address of 555-557, Cranbrook Road, llford, IG2 6HE England. Defendant, , Harjit Singh Athwal, is the diector of TLL.

8. Defendants, Matthew A. Wurgaft, and Andrew Kravis**,** upon information and belief are attorneys admitted to practice Law in the State of New York, and have acted at all relevant times as debt collectors for defendants Harjit and TLL, within the meaning of 15 U.S.C. § 1692a(6).

9. Defendant **KRAVIS & WURGAFT, P.C.** upon information and belief is a professional company based in Newark, New Jersey, and owned by defendants Matthew a. Wurgaft, and Andrew Kravis. At all relevant times they have acted as a debt collector on behalf of Harjit and TLL within the meaning of 15 U.S.C. § 1692a(6).

10. At all relevant times, all defendants were acting as a debt collectors within the meaning of 15 U.S.C. § 1692a(6).

12. Plaintiff, Poonam Keswani (hereinafter **"Keswani")**, is an International Humanitarian and Jeweler with a recognizable presence in the United States and overseas. Keswani is an individual New York State resident who was the victim of defendants' unlawful debt collection practice as described herein.

## **FACTUAL ALLEGATIONS**

13.  On or about September 27, 2018, defendants Harjit and TLL deceptively and falsely commenced an action in New Jersey Federal District Court, through their United States agent, Edward F. Bezdecki, wherein they demanded that Plaintiff pay them in excess of the usurious sum of $2 million, for an alleged debt, however, the action was procedurally dismissed by the Federal Court on February 7, 2019 (Copy of said complaint is annexed hereinafter as plaintiff's **Exhibit A)**

14.  Although the frivolous complaint was dismissed, defendants caused Plaintiff unparalleled economic strangulation and hardship by forcing her to spend enormous amounts of money on Attorneys to defend the frivolous action.

15.  On or about September 13, 2019, defendants Harjit and TLL, deceptively and falsely commenced another action in New York State Supreme Court, through Defendants Kravis & Wurgaft, P.C., Matthew A. Wurgaft, and Andrew Kravis,  wherein they demanded that Plaintiff pay them in excess of the usurious sum of $2 million, for an alleged debt.

16.  Defendants Harjit and TLL, through attorneys  Kravis & Wurgaft, P.C., Matthew A. Wurgaft, deceptively and falsely swore to the court that the amount they were seeking was accurate although they knew that no such debt of that amount was ever incurred by Plaintiff, they however averred possessing a true knowledge of the existence of the alleged bogus debt to the Supreme Court of the State of New York.

17.   Defendants Harjit and TLL, relying upon the spurious and conclusory affidavit of their attorneys and co-conspirators initiated a false process to coax the Court to grant them judgment so they can destroy the economic well being of Plaintiff .

18.   Defendants  Harjit, TLL,  Kravis & Wurgaft, P.C., Matthew A. Wurgaft, have maliciously published false information about Plaintiff  in the financial circles which has caused her denial of credit, untold economic hardship, loss of business negotiations and lucrative contracts and strangulation, through unimaginable attorney fees to defend the said bogus action state court.

19.   The said complaint of September 13, 2019,  contained false, deceptive and misleading statements that prejudiced the condition and welfare of plaintiff, caused her the loss of lucrative business deals in the Millions of dollars, in violation of 15 U.S.C. sec. 1692e

20.   Defendants  Harjit, TLL, Kravis & Wurgaft, P.C., Matthew A. Wurgaft, and Andrew Kravis, through their false law suits indeed forced Plaintiff to file bankruptcy and further expenses by way of attorney fees and other fees.

21.   Defendants  Harjit, TLL, Kravis & Wurgaft, P.C., Matthew A. Wurgaft, and Andrew Kravis,  have collectively caused plaintiff irreparable damages, inconveniences and losses of Jewelry contracts because they falsely maligned Plaintiff's reputation by spreading false and misleading information in the banking circles that Plaintiff was a "deadbeat" and as such should not be trusted.

22. Although Plaintiff never owed defendants the sum of $2 Million, she was subjected to a deprivation of secured rights in an immeasurable magnitude, in total violation of 15 U.S.C. sec. 1692.

23. Defendants violated 15 U.S.C. sec. 1692f by using unfair practices in an attempt to collect alleged non-existent debts.

24. Defendants violated 15 U.S.C. sec. 1692g by failing to effectively convey the 30 day debt verification/dispute rights set forth therein.

25. Plaintiff upon information and belief alleges that defendants utilize unlawful and illegal methods and unconscionable practices to cause untold hardship on unsuspecting victims, and as such should be compelled to seize and desist from their unsavory and malicious in preservation of equitable fairness and confidence in the judicial process.

## COUNT 1

### Declaratory Judgment

### 28 U.S.C §2201

26. Plaintiff repeats and incorporates all preceding paragraphs of the complaint as if fully set forth herein.

27. A justiciable controversy exists between plaintiff and defendants with respect to defendants' deceptive and false Debt Collection Communications, plus any prior and subsequent written communications, pleadings and all contacts with the Plaintiff by the

Defendants which constitute "communications" as defined by 15 U.S.C. §1692a(2) and 1692a(5) of the FDCPA.

28. The communications of the Defendants with the Plaintiff related to the collection of a debt the enforceability of which was barred by the applicable statute of limitations and, therefore, the Defendants engaged in conduct, the natural consequence of which was to harass, oppress and abuse the Plaintiff.

29. Defendants Harjit, TLL, Kravis & Wurgaft, P.C., Matthew A. Wurgaft, Caprio, are vicariously liable for the actions of Defendant Harjit in connection with any collection efforts made in relation to the debt.

30. The acts of the Defendants' as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for the Plaintiff's rights under the law and with the purpose of coercing the Plaintiff to pay the alleged debt.

31. As a result of the Defendants' conduct, the Plaintiff has sustained actual damages including, but not limited to, injury to her reputation, damage to her credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss, and she will continue to suffer same for an indefinite time in the future, all to her great detriment and loss.

## COUNT 2

### 15 U.S.C §1692f

32.   Plaintiff repeats and incorporates all preceding paragraphs of the complaint as if fully set

forth herein.

33.   By the acts alleged herein, defendants used unfair or unconscionable means to collect or

attempt to collect debt from plaintiff in violation of 15 U.S.C. § 1692f.

## COUNT 3

### 15 U.S.C §1692e

34.   Plaintiff repeats and incorporates all preceding paragraphs of the complaint as if fully set

forth herein.

35.   By the acts alleged herein, defendants Harjit, TLL, Kravis & Wurgaft, P.C., Matthew A.

Wurgaft, and Andrew Kravis, used deceptive means to collect or attempt to collect debt

from plaintiff in violation in 15 U.S.C. § 1692e(10).

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff requests of this court the following relief:

a.   Statutory damages in favor of plaintiff pursuant to 15 U.S.C.  § 1692K.

b.   Judgment pursuant to 28 U.S.C. sec. 2201 and 2202, declaring that the defendants have

violated the FDCPA based upon all the pleadings and exhibits.

c.   The entry of judgment in favor plaintiff against Defendants  for actual damages pursuant to

15 U.S.C. §1692k(a)(1);

d.   the entry of judgment in favor plaintiff against Defendant HARJIT SINGH ATHWAL for actual damages pursuant to 15 U.S.C. §1692k(a)(1);

e.   the entry of judgment in favor plaintiff against Defendant  TREASURES LONDON LIMITED for actual damages pursuant to 15 U.S.C. §1692k(a)(1);

f.   the entry of judgment in favor plaintiff against Defendant MATTHEW A. WURGAFT for actual damages pursuant to 15 U.S.C. §1692k(a)(1);

g.   the entry of judgment in favor plaintiff against Defendant  ANDREW KRAVIS AND KRAVIS & WURGAFT, P.C. for actual damages pursuant to 15 U.S.C. §1692k(a)(1);

h.   the entry of judgment in favor of plaintiff against Defendants HARJIT SINGH ATHWAL, TREASURES LONDON  LIMITED, MATTHEW A. WURGAFT, AND ANDREW KRAVIS, KRAVIS & WURGAFT, P.C. for the sum of  Twenty million dollars **($20,000,000)**; as punitive damages for all the violations enumerated above.

i.   Awarding plaintiff costs of this action and expenses; and

j.   Awarding plaintiff such other and further relief as the Court may deem just and proper.

10

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the FRCP, Plaintiff,  Poonam Keswani hereby demands a trial by jury for

each and every cause of action.

Dated: New York, New York
      December 14, 2020

By _Poonam Keswani_
Poonam   Keswani
Plaintiff Pro Se
610 5th Avenue
#5314
New York, NY 10185

**TO DEFENDANTS:**

**HARJIT SINGH ATHWAL**
c/o 401 WASHINGTON STREET
TOMS RIVER, NJ 08753- 6742

**MATTHEW A. WURGAFT**
201 WASHINGTON STREET
NEWARK, NEW JERSEY 07102

**KRAVIS & WURGAFT, P.C.**
201 WASHINGTON STREET
NEWARK, NEW JERSEY 07102

**TREASURES LONDON LIMITED**
c/o 401 WASHINGTON STREET
TOMS RIVER, NJ 08753- 6742

**ANDREW KRAVIS**
201 WASHINGTON STREET
NEWARK, NEW JERSEY 07102

# NOTARY VERIFICATION

**STATE OF NEW YORK}**

**COUNTY OF NEW YORK}**

On this day, _New York_ 2020 personally came before me Poonam Keswani who proved her

identity to me to my satisfaction and acknowledged her signature in my presence under the

complete authority and Trust in her private Sovereign Sacred Religious Convictions only, and

held harmless at all times.

Declarant

By ___Poonam Keswani___
Poonam Keswani

BEFORE ME,

ELIAS VALDEZ
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01VA6238385
Qualified in NEW YORK County
Commission Expires APRIL 4, 2023

12/14/2020

NOTARY PUBLIC

MY COMMISSION EXPIRES ON

# EXHIBIT A

Edward F. Bezdecki
401 Washington Street
Toms River, New Jersey 08753
(732) 349-5066
NJ ID NO:  023231985
PA ID NO: 45115
Attorney for Plaintiff

## UNITED STATES OF AMERICA DISTRICT COURT
## FOR THE DISTRICT COURT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| TREASURES LONDON LIMITED (COMPANY NUMBER 10595313) and HARJIT SINGH ATHWAL<br><br>Plaintiffs<br><br>v.<br><br>POONAM KESWANI, a/k/a PARIS KESWANI a/k/a POONAM PARIS KESWANI; TREASURES OF PRINCE, LLC (ENTITY ID: 201227310128) A CALIFORNIA COMPANY;<br><br>Defendant | UNITED STATES DISTRICT COURT DISTRICT OF New Jersey<br><br>Civil Action<br><br>Case number:<br><br>COMPLAINT FOR CONSUMER FRAUD, NJSA 56:1, ET SEQ, RICO NJSA 2C:41-1, ET SEQ AND DEMAND FOR TRIAL BY JURY |

## JURISDICTION

This action is brought pursuant to 28 USC § 1332; and 18 USC §

63.     Plaintiff further invokes pendent jurisdiction of Court to be

considered in claims arising under New Jersey State Law, in particular the New Jersey Consumer Fraud Act, NJSA 56:1, et seq.    Amount in controversy in excess of $2,000,000.00.

## PARTIES

Plaintiffs, Treasures London Limited (Company Number 10595313) and Harjit Singh Athwal, individually and collectively, residents of London, England, situated at 555-557, Cranbrook Road, Ilford, IG2 6HE England, director of Treasures of London Limited ("TLL"), registered in United States Offices at the Office of Edward F. Bezdecki, Esq., 401 Washington Street, Township of Toms River, County of Ocean and State of New Jersey registered with the Secretary of State of New Jersey.

1.    TLL is a fully owned company, Principle is Harjit Singh Athwal ("Harjit").   Harjit is a solicitor of the High Court of England and Wales and one of the founding principles of Excel Law of London/an Essex based law firm. Harjit's profession as a solicitor holds him in a position whereby honesty and integrity are paramount which can all be verified by external third party references through his business dealings with recognized and established international corporate and non-corporate clients.

2.     The Defendants, in particular the main Defendant, Poonam Keswani ("Poonam"), resident and domiciled in the State of New York, New York City, with a residents address at 180 Riverside Boulevard, Apartment 18B, New York, New York 10069.

3.     Treasures of Prince LLC ("TOP") last known registered office address in New York appears to be 22 West 48th Street, Suite 206, New York, NY 10036 and/or 10 West 47 Street, Suite 1004, New York, NY 10036 as well as having addresses in California at 1121 E Wilson Ave Ste 7 Glendale CA91206.

## STATEMENT OF FACTS

4.     The Defendants Poonam, et al at all times mentioned herein on or about 2006 through 2010 Harjit and Poonam became good friends and had commonality of interests both being of Indian descent and having first made contact in around late 2006 via an online forum and following which they exchanged telephone numbers.

5.     Harjit and Poonam built up a friendship by regularly exchanging telephone calls or text messages almost on a daily basis, without having even met at this stage between 2006/2007 and around 2014.

6.     Poonam and Harjit exchanged pictures of themselves including pictures of their friends, family holiday snaps and other day to day activities in which they had a commonality.

7.    At the time that Harjit became acquainted with Poonam between 2006/2007 and 2010 Poonam was traveling between the Bahamas and Los Angeles where her family was based in the US. During the period of 2006 and 2007 Harjit was a trainee lawyer carrying out his training contract at a small to medium sized law firm in London earning a basic salary.

8.    Poonam informed Harjit that she was running her own jewelry retail stores with her and her brothers running the family business in the Bahamas and LA.

9.    Harjit received pictures of Poonam's custom made jewelry that she would then sell and retail on the open market both online and via her retail outlets in Bahamas and LA.

10.   Poonam had told Harjit that she was a certified gemologist, having graduated from the Gemology Institute of America ("GIA"). However, based on an online search of the GIA alumni directory and direct enquiries of the GIA, it has subsequently become known that this was a misrepresentation of credentials by Poonam to Harjit.

11.   Until the period of around 2009/2010 and 2012 the communications between Harjit and Poonam stopped because Harjit was busy working and running his law firm in London together with, what we now know, a change in Poonam's personal and domestic circumstances.   On around December 2013 Harjit and Poonam

initiated contact once again and communicated as if there was never even a break in time.

12. It was around this time that Poonam told Harjit that there was an issue within her family which resulted in her brother having a child by the name of Prince and Poonam ended up adopting him as her son and that she was now living and working in New York. At no point did Poonam refer to herself as being or having been married or made any references to any marital or non-marital partner.

13. Based on the information supplied by Poonam to Harjit between 2006 and 2010 this had the effect of building confidence in Harjit that Poonam was a successful business woman with proven and certified expertise in gemology and the jewelry business.

14. On or around December, 2013, Harjit was planning a trip to the United States with his family down the East Coast, starting with New York City and this resulted in Harjit reaching out to Poonam to tell her of his travel plans. Poonam was also aware at this point that Harjit was now well established at his new law firm and was doing well for himself as he was paying for most of his family's holiday trip.

15. Eventually Harjit and Poonam met in New York City the first week of April 2014, arranged to go for drinks and they got along very well with Poonam having met Harjit's family and later all of them having gone out for dinner and drinks together with Poonam and her

good friend Judy and for which all of Harjit had paid for.   Poonam
even offered and allowed Harjit and his family to use Poonam's Black
Range Rover for the day so that they could go shopping at the
Premium Outlets.

16.   During this period Harjit and Poonam became close and
Poonam showed Harjit pictures of her adopted son Prince, who then
was around 3 years of age, although Harjit did not get to meet him
during this visit. Harjit and Poonam also exchanged gifts during this
visit. It could be seen by Harjit that Poonam appeared to be doing well
for herself by her designer clothes, accessories, jewelry, apartment
and her car.

17.   A number of trips were made back and forth by Harjit to
New York and Poonam to London following which Harjit and Poonam
developed a deeper and intimate relationship. Harjit provided Poonam
with further expensive gifts during the London trip in September 2014
and Harjit's subsequent trips to New York in December 2014, June
2015 and April 2016.

18.   Further to this Poonam encouraged Harjit to develop a
close and emotional attachment to her adopted son. On or around
April 18, 2016 Harjit received a WhatsApp message from Poonam
stating that Prince "...is missing you... He said why you had to leave
so fast... He wants to play Uno" and Poonam continued the following

day "I missed you, Prince was crying... He is attach to You... He really doesn't ask for anyone... or cry for anyone like this."

19.   During Harjit's trips to New York he visited both Poonam's personal residence and her business premises, which further reinforced Harjit's view that Poonam was a successful business woman.   Furthermore, Poonam would often send Harjit pictures and images of her travelling business/first class back and forth between New York; LA; Bahamas and then later Dubai and India.

20.   In March, 2016 at 15:29 Harjit received a Whats App message from Poonam attaching a picture of a large diamond and stating "I just sold this 4.5 million dollar diamond".

21.   On April 1, 2016, Harjit received another message from Poonam stating that she was preparing for a jewelry show in Las Vegas which was said to take place on April 15, 2016.

22.   On September 1, 2016, there was a series of WhatsApp messages between Harjit and Poonam whereby Poonam confirmed she was setting up an international rough diamond business and asked for advice from Harjit in the opening of a Spanish bank account for one of her business partners. This was the first reference by Poonam to Harjit about her rough diamond business as prior to this she had only referred to her online and retail jewelry business.

23. On around September 7, 2016, Harjit had introduced Poonam to a few of his business contacts who had expressed an interest in transacting in rough diamonds and Poonam supplied both Harjit and his contacts with a Treasures Group of Companies Letterhead/Profile, which referred to Poonam as President to various group companies (including amongst others both TOP and Treasures International) based both in New York and Bahamas together with details of external references and holding herself out as a high profile successful entrepreneur.

24. On November, 8 2016 at 22:13 Harjit received a message from Poonam stating that her bank accounts had been seized and cards been blocked by the IRS for an audit. She subsequently asked Harjit whether she could transfer $825,800 into his UK bank account, as she needed to complete a Dubai transaction and could not receive the money into her account. Harjit agreed to help on the basis that Poonam was to provide him with details of where the payment was coming from and to ensure it was all legitimate in order to satisfy his bank's Anti Money Laundering policies and to provide him with those details before any wire was done.

25. However, Harjit did not receive the information required nor the funds. Harjit now sees this as an attempt by Poonam to deceive

the IRS and to launder funds through usages of his personal bank accounts although these transactions never actually materialized.

26.   On November 9, 2016, Harjit received a similar message from Poonam that she was due to receive a further sum of $125,000 from a transaction in Paris and was again seeking to use Harjit's UK bank account facilities which again Harjit now sees as an attempt by Poonam to deceive the IRS and launder this sum of money. Again nothing materialized as Poonam failed to provide Harjit with the audit trail and information he had requested.

27.   On around November 9, 2016, Poonam had asked Harjit to arrange some funds for her in Dubai to assist her during her trip as her accounts were still frozen. On around November 13, 2016, Harjit arranged for one of his friends to meet Poonam at her hotel in Dubai and hand over cash equal to the sum of £3,000 GBP/13,500 AED in local currency.  Harjit had arranged to reimburse his friend direct for the payment, however Poonam has upon request failed to return or pay back the funds to Harjit to date.

28.   On November 5, 2016, Harjit received a message from Poonam inquiring whether "do you know anyone that we would be interested in buying rough diamonds...in Dubai...I have almost five thousand carats...interested in buying rough diamonds...I have 550 kg gold coming to Dubai the end of the month as well".

29.  On November 16, 2016, Harjit received a message from Poonam I am attaching pictures of rough diamonds and an inventory sheet.  She said that the diamonds originated from Sierra Leone.  The same day at approximately 21:30 hours Harjit received another message from Poonam stating "I got all the documentation done.  Got Kimberly export papers, attaching a Kimberly process certificate that is here in loan on November 14, 2016, accompanied with photographs of the sealed envelope with the Sierra Leon stamp and two photographs of the inventory with rough diamonds totaling 173.62 carats and 20.66 carats in weight.

30.  On November 17, 2016, Harjit received a message from Poonam to say she needed $10,000 in AED for brinks and asking whether he could arrange this for her and saying that she would return the funds back to Harjit the following week as she had spoken to IRS and that their audit had almost completed and everything is in order. Poonam provided Harjit with the following Dubai bank details on November 19, 2016, Karansingh VINOD purohit , a/c no : 1014999294601 , cif no : 49992946 , ibn battuta branch , swift code : EBILAEAD , IBAN no :  AE240260001014999294601, which she said she had confirmed with Karan in Dubai and Harjit subsequently made an electronic bank remittance from his personal account on November 21, 2016, for the sum of £8,000 GBP as per the bank details provided

by Poonam for which Poonam subsequently acknowledged receipt on November 23, 2016. Again, Poonam has upon request failed to repay Harjit these funds to date.

31.   The above narrative can now be seen as the period when Poonam was testing her ability to manipulate and manoeuvre Harjit into giving her money and from which it later can be demonstrated that Poonam never had any intention of repaying. Poonam certainly made no attempts to every repay these funds.

32.   Poonam's reference to and requests for transferring large sums of money to Harjit were either part of a longer term grooming process so as to increase Harjit's confidence in her or testing Harjit's propensity to commit criminal offences so as to provide Poonam with leverage at a later date.

33.   Harjit has strong evidence in the form of voluminous electronic communication from Poonam to support the claim herewith that she had defrauded him. The next section of Harjit's statement of facts is set out in four themes: -

(a) False misrepresentations, which encapsulates the frauds alleged whereby it can be demonstrated that Poonam:

(i)   Used her credentials and CV referring to her qualifications and group companies and businesses

34. Reference to Poonam's GIA certification, certified gemologist and citing her ever-expanding jewelry business in the Bahamas, Dubai and New York together with summary of her affiliations with UNICEF; Member of United Nations Environmental Programme, voluntary work at New York Cares, founding of Prince Foundation (named after her adopted son) and working with Secaucus Mayor, Michael Gonnelli.

35. Poonam had made further representations, on January 29, 30 and 31st, 2017, to Harjit to confirm that her company TOP had no liabilities or payables and sent various images of what appeared to be rough diamond parcels and commenting of her working with people in Dubai and Africa

36. Poonam commented that this is really nice and clean goods and we can make really good profit from cutting and polishing the really big stones and selling to customers in London, USA, Dubai and to put in retail in Poonam's Bahamas store at Atlantis where she has really good customers and buyers. Poonam also said that the parcels were already in Dubai and she would be hand picking the goods herself personally and would provide Harjit with the details of the stones and carat weight from there together with a full trail and explanation of the inventory and purchases.

37.   Poonam further represented on February 6, 2017, that in relation to the return of TLL's Original Loan and profit that the sale of a single diamond could generate enough funds to return the Original Loan with the remaining sales generating pure profit

38.   Poonam had confirmed to Harjit that the Original Loan would be returned to TLL within a period of 4 to 6 months together with a return of an equal–share of all profits made by TOP and generated through retail sales of the cut and polished diamonds.

**(ii)    Used her knowledge of the size and whereabouts of Harjit's funds as the objective of the fraud**

39.   Immediately prior to each fraud and demand for funds Poonam was fully aware of Harjit's personal finances. By way of example Poonam was fully aware from Harjit that he was due to be repaid a sum of 400k from his accountant as per Harjit's message to Poonam on May 17, 2017, "I have cash coming back next month...my accountant has pay me back 400k by 11 June and confirming on June 6, 2017 @ 15:59, "My accountant has paid me back babe. It can be noted, exactly like clockwork, Poonam a few hours later the same day barrages Harjit with phones calls, video calls, and images of diamonds together with the proposal relating to the new 793 carats parcel and sends him various images coupled with her new CV/Profile and

request for an identical sum to that she knows was received by Harjit from his accountant.

**(iii)   Used her confirmations of injecting her own capital and funds and reference to collateral by way of existing and new merchandise**

40.   Harjit has strong evidence in the form voluminous electronic communications that despite Poonam's assurances that she was to inject her own funds and provide goods by way of collateral, neither of these have materialized to date. Examples of this dishonesty can be demonstrated as follows:

41.   On February 16, 2017, Poonam messaged, "So I will involve you with one transaction for now and you see how it goes love". "Once I receive the parcel in New York which I already shipped from UAE I will take the funds out of total $800k and give you the inventory list...fair enough...$400k from you and $400k from me and forget about the travel expense" "In two months I will have a cash flow from the parcel. "Love you...Will secure your funds...don't worry...send you the profit and funds before you even realize...I promise you...my word to you...even if I lose...your funds are safe with me....you dealing with me not Africa"

42.   Poonam provided the following assurances prior to Harjit agreeing to transfer the Fourth Advance: "Flipping $3,800 a carat.

Yeah love. Don't worry I won't transfer anything until we have goods in our hand. Harjit replied "But you have original capital and profit secured already right?" to which Poonam replied "Yeah I will bring everything to London And certificates. Of the stones which is already cut and polished. We have capital secured since we have the goods in hand. Profit will come as we sell, All the stones are not polished yet. Still in process. I will work on cutting them faster after my pageant".

43. Poonam was to provide the inventory of the goods purchased; a breakdown of the accounts; copy of cashier checks and provide the collateral for the funds in advance for a loan under the Original Loan Second, Third and Fourth advances. However, despite several promises from Poonam and numerous requests by Harjit this information was never supplied and what can now be seen as a deliberate act by Poonam to conceal the same

(iv) **Exerted strong emotional pressure;**

44. In each of the four wire frauds Poonam used her strong emotional ties to Harjit to exert maximum pressure on him to comply with her requests for funds. This can be demonstrated by way of earlier reference of Poonam encouraging Harjit to build a strong tie with her adopted son and also using their emotional relationship to build trust and confidence as part of her plan to defraud him.

(v)   **Exerted strong time pressure to achieve the transfer of Harjit's funds**

45.   On each occasion of the four wire frauds Poonam prefaced each request with an imminent deadline, which placed time pressure on Harjit to part with his funds. This together with the emotional pressure left Harjit vulnerable to the hard-nosed confidence trick that was being played on him by Poonam. Examples of these can be seen under the headings of each wire fraud.

**(b) The Loan Agreement**

46.   Poonam had suggested that in January, 2017 a new business opportunity, namely de-sourcing, processing a subsequent sale of rough diamonds throughout the US, London, USA and Poonam's already existing new clients.

47.   On around January 31, 2017, Harjit agreed with Poonam via the WhatsApp correspondence and general heads of terms they originally we agreed to set up a new Limited Company in the UK ("TLL") plaintiff herein in which TOP Treasures of Prince and Harjit would be equal shareholders. However, due to the urgent timings impressed upon Harjit by Poonam and on the advice of Harjit's accountant, it had subsequently been agreed that Poonam would conduct her business through TOP and Harjit would do so via TLL only without either having any shareholding in each other's entities.

Thus it was subsequently agreed and as per Poonam's message to Harjit that he would provide the funds by way of a loan from TLL to TOP and TOP would return back the initial principal to TLL and going forward TOP would distribute a return on the loan to TLL by way of profits accumulated by TOP on the said transactions.

48.  Poonam asked Harjit on January 31, 2017, whether she should fly to Dubai via London to sign the loan documents and PG and to which Harjit said yes. Harjit also expressed his concerns at the loan having been unsecured and to which Poonam replied what would Harjit need to secure the loan if he were in NY and she would have given him diamonds as collateral to hold against it and that she would bring a 10 carat diamond ring for Harjit to hold and secure his loan and which she said was worth a lot more than $400,000.

### (c) Four Wire Frauds

49.  In summary, Poonam asked that TLL provide the funds to TOP as a principal loan to TOP (the "Original Loan") so as to fund the purchase, cutting and polishing of rough diamonds. Following this request TLL then made the following payments to TOP on the same understanding that they were to be treated as a loan from TLL to TOP:

I.   On January 31, 2017, Poonam requested an immediate payment of $400,000.00 as she had allegedly been offered the opportunity to purchase a parcel of diamonds, as she

stated in her WhatsApp message to the same day at 12:48 P.M. "we will lose this deal...it's really good." and following which Harjit transferred £317,830.62 ($399,980) ("Original Loan") on February 02, 2017, from his personal account initially to TOP (as per Bank Details supplied by Poonam as: Treasures Of Prince, 22 West 48th Street, Suite 206, New York, NY 10036, Chase Bank, Account Name: Treasures of Prince. Account Number: 13657130)

II.   On or around 28 March 2017, TLL provided TOP with a further loan by advancing the sum of £60,000 ($74,334) ("Second Advance"), representing TLL's contribution towards the purchase of another parcel of rough diamonds;

III.   On or around 18 May 2017, TLL provided TOP with a further loan by advancing the sum of £47,270.30 ($59,964) ("Third Advance") representing TLL's contribution towards an alleged acquisition of 1000 carats of diamonds; and

IV.   On 12 June 2017, TLL provided TOP with a further loan by advancing the sum of £300,000 ($377,400) ("Fourth Advance"), as a contribution towards an alleged purchase of 793 carats of diamonds.

## (d) The aftermath of the four wire frauds from June 2017 until present

50.   This section illustrates Poonam's dishonest intention never to repay Harjit and TLL any of the funds that had been disbursed to Poonam and TOP from the start. The examples now given by Harjit,

which are underpinned by voluminous electronic evidence, show Poonam's propensity to dishonestly lie, cheat, deceive, deflect, defer and use emotional blackmail to build false confidence that Harjit was going to be repaid knowing full well from the start that she never intended to pay Harjit and TLL a single dollar back.

(i) **Family and Personal Circumstances:** Reference to Poonam's cousin Manisha having had an accident; Poonam's father in ICU in Mumbai; Poonam having been diagnosed with cancer; Poonam's frequency of sickness through fever, headache, blocked nose and wearing of an oxygen mask and hospitalized. All these circumstances so as to avoid having to communicate and/or repay Harjit and TLL the funds

(ii) **Repeated Promises to Pay:** Harjit has many documented examples of Poonam's lies in respect of promising payment when nothing materialized some of which can be seen as follows: Email communication from Poonam confirming she is with her accountant and remitting TLL the sum of $1m; Poonam referring to merchandise having been sold and wire transfer on route to TLL; promise of $500,000 payment in November 2017; reference to escrow funds having been released in the sum of $1.7m to TLL; Payment plan to have all funds paid by April 13th 2018 latest;

(iii) **Building false confidence**: Harjit has many documented examples of Poonam having continuously provided him with false confidence by dishonestly promising enhanced returns on the loans and false security some of which can be demonstrated as follows: executing a personal guarantee in October 2017; providing accountant's verification acknowledging debt of $2m to TLL in November 2017; offering of payment of life insurance policy in the sum of $3m; offering of 30% shareholding in Poonam's movie; offering to share future profits and making up losses suffered by Harjit and TLL; sending pictures of merchandise and offering to send to London to Harjit; All of these false promises have failed to materialize to date.

(iv) **Other Excuses and Falsehoods used for non-payment**: Harjit has further documented evidence demonstrating Poonam's dishonesty in avoiding having to repay Harjit and TLL. Such examples can be seen by the following: Poonam's use of frequent travel and reference to stress whilst allegedly in Africa including Uganda and Sierra Leone whilst patently elsewhere; other frequent travel to Dubai and India amongst other destinations so as to deflect and defer payment; having been defrauded over a diamond shipment in the sum of $5m despite having failed to provide documentary evidence of the same; several promises of shipments and new business for sizeable transactions and none of which having materialized to date.

**(v) Attempts to involve Harjit in criminality:** In addition to the examples having been provided earlier through reference to Poonam's alleged attempt to defraud the IRS and money laundering Harjit can provide further evidence about Poonam's attempt to involve him in criminality. These examples can viewed as either an attempt by Poonam to gain leverage against Harjit following the earlier four wire frauds or the providing of false confidence that Poonam was dealing with sizeable transactions and had the ability to repay. One example being money laundering in February 2018 through requesting whether Harjit could assist Poonam in accepting a credit card payment to the sum of £1.3m GBP in the UK for a London customer thereby attempting to defraud the tax authorities but again which never materialized. The second example of that in October 2017 when Poonam alleged to have made arrangements to ship goods to TLL in London to the value of circa $5m and which would be documented via two invoices with one to be sent via email to Harjit at true value and the other at an under value to be sent with the parcel with an intent to defraud customs authorities in US and UK. Again, nothing having materialized.

**(VI) Misappropriation and dissipation of funds:** Given the fact that TLL and Harjit have not received a single dollar of funds provided to Poonam and TOP and coupled with the evidential narrative above it can be shown that Harjit and TLL's funds, in whole or in part, have been

misappropriated by Poonam so as to assist her with, inter alia, the following: Poonam's movie and entertainment ventures; personal luxury lifestyle including holidays, Prince's private school fees and upkeep; repeated business class travel; luxury hotel accommodation; upgrading of private residence and purchase of luxury goods.

51.  Eventually TLL is now due a sum $2,500,000.00 by Poonam and TOP.

### FIRST COUNT
### FRAUD

1.  At all times hereinafter mentioned, the aforementioned paragraphs are set forth at length herein.

2.  At all times hereinafter mentioned, the loans that were made by TLL and by Harjit Singh Athwal personally to Poonam and her companies were made in good faith.

3.  Poonam being very sophisticated providing all kinds of documentation attached hereto as Exhibit "A' as to her credibility and also as to her accountant's confirmation of same, led TLL and Harjit to believe that the statements made by Poonam were true.

4.  After misleading and misrepresenting all of the diamonds that were supposed to be brought into New York and Dubai from it became abundantly clear that the monies loaned to TOP together with

Poonam's personal guarantee by her to TLL and Harjit were false and misleading.

5.    The fraud that Poonam and her companies perpetrated on TLL and Harjit were substantial and material and caused severe damage and loss to TLL and Harjit personally.    Harjit made these loans from personal funds and is now required to repay his family's business from personal funds that were advanced to TOP and Poonam.

6.    Poonam by providing her accountants summary and profile about Poonam demonstrated to anybody who became familiar with Poonam that she was indeed on her way to making millions of dollars.  It can now be seen that all in all, Poonam had created an illusion to Harjit that she had built up a strong and profitable business, which, paired with his principal loans, was going to be very lucrative for both of them. All of the above being false and misleading.

7.    TLL and Harjit relied on all these false promises. At the time Harjit had no reason to believe or question the legitimacy of the business proposal based on the fact Poonam had represented to him that (i) TOP had no liabilities or payables and was a clean entity controlled solely by her; (ii) that she had injected in her own principal into the business although to date Poonam has not supplied any evidence of having injected her own capital into the projects referred

to; (iii) she was a certified gemologist; (v) she was running an ever expanding jewelry business in Bahamas and New York; (vi) she was a credible business woman and of honest character through citing her affiliations with UNICEF; UN; New York Cares and other charitable foundations.

8.    It is only now very recently that Harjit has discovered that much of what Poonam told him was actually lies and he now believes that Poonam never had any intention of paying him and TLL and it pains for him to say that he believed that the last few years has all been one big manipulation by Poonam deliberately swindle him out of his hard earned life savings. It is for this reason that TLL and Harjit are instigating legal proceedings against her and TOP to recoup the monies that are due to Harjit and TLL given Poonam's very dishonest character, which can be summarized as follows: (a) Falsehood promises of repayment on several occasions and continuous open acknowledgment of the debt together with payment plans; (b) family bereavement and/or sickness including her own sickness and diagnosed with cancer and/or intervening third party events; (c) false representation of GIA and Gemology credentials; (d) Manipulative behavior and false confidence building by creating a profile with reference to UN; UNICEF; Charitable foundations so as to create a mask to hide behind; (e) inconsistencies with domestic and personal

circumstances; (f) misappropriation of funds and lack of transparency;
(g) continuation of first/business class travel, lavish wealthy lifestyle
and continuous visits to UAE and India; (h) providing and citing
reference to robbery at Poonam's store in Bahamas to the tune of $3m
and for which there has been an alleged insurance claim declinature;
(i) attempts to launder funds through use of Harjit's personal bank
accounts and reference to requiring assistance to swipe 1.3m on a
card for a transaction citing that it was too large to transact on
Poonam's own company in US and reference to IRS seizure of
accounts

**WHEREFORE**, TLL, Treasures of London and Harjit Singh
Athwal seek judgment against Poonam Keswani and all of the named
Defendants individually and collectively for compensatory damages,
for punitive damages for counsel fees and costs and for such other
further relief to protect the rights of the Plaintiffs herein.

## SECOND COUNT
## CONSUMER FRAUD NJSA 56:1, ET SEQ

1.    Plaintiff's repeat and reallege the aforementioned
statements of facts as if set forth at length herein.

2.    Because Poonam is a resident and domiciled in New York
City, State of New York and Harjit Singh Athwal ("Athwal") has
registered offices in the State of New Jersey the New Jersey

Consumer Fraud Act is applicable to the case and facts herein under NJSA 56:A-1.

3.    There is no question that Poonam has held herself out as a retail seller of diamonds and a processor of rough cut diamonds.

4.    As a retail seller and a person who has accepted loans from the Plaintiffs herein, and Plaintiff's being a purchaser of merchandise, Plaintiffs must be considered a consumers.

5.    Plaintiffs have suffered an ascertainable loss under the consumer fraud act.

6.    The actions by Poonam and her related companies in fraudulently misrepresenting facts to the Plaintiff herein that defendant would be returning Plaintiff's loans with a profit was misleading and fraudulent.

7.    Obviously the Defendants individually and collectively have absconded with Plaintiffs funds.

8.    Defendant is a US Citizen, Plaintiff albeit a citizen of London, England is doing business in New Jersey under the registered offices of Edward F. Bezdecki at 401 Washington Street, in the Township of Toms River, County of Ocean and State of New Jersey.

9.    As a Seller of merchandise, Poonam comes within the ambit of the Consumer Fraud Act.    As a potential buyer and lender of funds, to the Defendants, Plaintiff is a Consumer.

**WHEREFORE**, Plaintiff seeks judgment against Poonam and her related companies individually and collectively under the Consumer Fraud Act for treble damages, counsel fees, costs, compensatory damages, punitive damages, for such further relief to protect the rights of the Plaintiff herein.

## COUNT THREE
## BREACH OF CONTRACT

1.    Plaintiff repeats and alleges the aforementioned facts as if set forth at length herein.

2.    At all times hereinafter mentioned, Plaintiff's entered into a contract with Defendant and whereby Defendant was to provide merchandise from of rough cut unprocessed diamonds Defendant was to process and cut the diamonds and sell them to wealthy individuals in Dubai and also to wealthy individuals in the Bahamas together with the Defendant's international and domestic US clients and her retail stores.

3.    The Plaintiff, has received admissions on numerous occasions of the contract that existed between Plaintiff and Defendant.

4.     Defendant has breached the contract substantially and materially.

5.     Defendant has been placed on notice of a demand of the return of the monies in the sum loans of $2,500,000.00.   Defendant has now refused to provide payment saying that the Defendant has lost $5,000,000.00 in a fraud perpetrated upon the Defendants.

6.     All of the representations and the numerous voluminous emails, communications and admissions by the defendants individually and collectively demonstrate that the fraud that was created by Poonam is basically raising to a Ponzi scheme.

7.     The breach of the contract between the parties is substantial material.

**WHEREFORE**, Plainitiff seeks judgment against the defendants individually and collectively for a breach of the contract, for counsel fees, for costs, compensatory damages and punitive damages to protect the rights of the Plaintiffs herein.

### COUNT FOUR

### BREACH OF GOOD FAITH AND FAIR DEALING

1.     Plaintiff repeats and alleges the aforementioned facts as if set forth at length herein.

2.    At all times hereinafter mentioned, the Defendant, Poonam and related companies were obligated to act in good faith and dealing fairly with Plaintiff's herein.

3.    The failure to act in good faith and perpetrating a fraud on Plaintiff, Defendants are guilty of violating New Jersey's "implied covenant of good faith and fair dealings and all contracts."

4.    Because Plaintiff was defrauded and Defendant acted surreptitiously and unlawfully, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff seeks judgment against the Defendant individually and collectively for compensatory damages, punitive damages, counsel fees and costs for such further relief to protect the rights of the Plaintiff herein.

## COUNT FIVE

### VIOLATION OF RACKETERRING INFULENCE AND CORRUPT ORGANIZAITON ACT CIVILLY NJSA 2C:41-1, ET SEQ

1.    Plaintiffs repeat and reallege the aforementioned as if set forth at length herein

2.    At all times hereinafter mentioned, the Defendant, Poonam and her related companies were enterprises and acted with the personnel influence on those enterprises on the Defendant, Poonam

seeking to unjustly enrich both Poonam and her co-defendants at the expense of Harjit and TLL.

3.     More than two predicate acts have occurred within ten (10) years' time, to wit, the use of the internet, the use of mails and the use of other communications in violation of the Racketeering Influence and Corrupt Organization Act ("RICO") NJSA 2C 1241-1, et seq.

4.     Defendant has also utilized the enterprise to wit TOP and other related companies in seeking to defraud Plaintiff's herein.

5.     The predicate acts that have been met, the enterprise has been outlined and through the use of the enterprises TOP and other related companies, Poonam have violated the act.

**WHEREFORE,** Plaintiff's seek judgment under NJSC 2C:41-1 civilly, for treble damages, punitive damages, compensatory damages and for such further relief to protect the rights of the Plaintiff herein.

## COUNT SIX

## CONVERSION AND UNJUST ENRICHMENT

1.     Plaintiff repeats and realleges the aforementioned as if set forth at length herein.

2.     Poonam in taking monies from Plaintiff's converting same to her own personal interest for use of purchases of items and other assundries for her own benefit has unjustly enriched the Defendants individually and collectively at the expense of Plaintiff.

3.    The actions of Poonam and related defendant companies in defrauding and enriching themselves have damaged the Plaintiffs herein.

**WHEREFORE**, Plaintiff seeks judgment for compensatory damages, punitive damages, counsel fees and costs and for such further relief to protect the rights of the Plaintiffs herein.

### JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to the provision of Rule 4:25-4, the Court is advised that Edward F. Bezdecki is hereby designated as the trial counsel for the Plaintiffs, Treasures London Limited (Company Number 1095313) and Harjit Singh Athwal.

### CERTIFICATION OF NO OTHER ACTIONS

I hereby certify that the matter in controversy in the within action is to the subject of any other action pending in any court or of any pending arbitration proceeding to the best of my knowledge and belief. To the best of my knowledge and belief, no other action or arbitration proceeding is contemplated. I further certify that other than the parties set forth in this complaint, I know of no other parties that should be made a part of this law suit save for any that may transpire through subsequent discovery and disclosure from the defendants or later introduced to proceedings. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

## CERTIFICATION OF COMPLIANCE
## REGARDING PERSONAL IDENTIFIERS

I certify that confidential personal identifiers have been redacted from

documents now submitted to the court and will be redacted from all

documents submitted in the future in accordance with Rule 1:38-67 (b)".

9/27/18

EDWARD F. BEZDECKI
ATTORNEY FOR PLAINTIFFS,
TREASURES LONDON LIMITED
(COMPANY NUMBER 1095313) and
HARJIT SINGH ATHWAL

*Pro Se*
*Reviewed*
*KH*

*Summons*
*Issued*
*KH*



# 20 CV 10578

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**Daniel Patrick Moynihan United States Courthouse**
**500 Pearl Street, New York, N.Y. 10007**

**Ruby J. Krajick**
**Clerk of Court**

**MEMORANDUM OF PRO SE FEE**

CASE CAPTION:     POONAM KESWANI

VS

Harjit Singh Athwal, Mathew A. Wurgaft, Kravis & Wurgaft, P.C, Treasures london Limited,  Andrew Kravis

Select Venue: Manhattan: _____          White Plains: _____

Has this action, case, or proceeding or one of the same been previously filed in S.D.N.Y at any time?   ___No ___ Yes
If yes, please provide the docket number here _____. Was this case dismissed?  ___No ____ Yes

<u>Natures of Suit:</u>

___440 Other Civil Rights
___442 Employment
___462 Naturalization Application
___463 Alien Detainee
___465 Other Immigration Actions
___510 Motions to Vacate Sentence 28 USC 2255
___530 Habeas Corpus
___540 Mandamus & Other
___550 Civil Rights
___555 Prison condition
___820 Copyrights
___830 Patents
___840 Trademark
___863 DIWC/DIWW (405(g))
___864 SSID Title XVI
_X_890 Other Statutory Actions
___Other Nature of Suit: _____

Do you claim this case is related to a civil case now pending in S.D.N.Y as defined by Local Rule for Division of Business 13?  If yes, please provide the docket number here _____

FILING FEE:

____$402.00 NEW COMPLAINT          ____$5.00 HABEAS CORPUS PETTITION          ____ IFP

CASE # 20CV10578

RECEIPT # 4654 01270570

JUDGE ASSIGNED Abrams
Netburn

**AFTER YOUR PAYMENT HAS BEEN PROCESSED, PLEASE RETURN THIS FORM WITH A COPY OF THE RECEIPT TO THE PRO SE INTAKE UNIT TO COMPLETE THE FILING PROCESS.**

Court Name: District Court
Division: 1
Receipt Number: 465401278870
Cashier ID: Virrokaj
Transaction Date: 12/15/2020
Payer Name: POONAM KESWANI

CIVIL FILING FEE- NON-PRISONER
For: POONAM KESWANI
Amount:        $402.00

CREDIT CARD
Amt Tendered: $402.00

Total Due:      $402.00
Total Tendered: $402.00
Change Amt:     $0.00

20CV10578 ABRAMS NETBURN