UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 04/14/2022

POONAM KESWANI,

                              Plaintiff,

                v.

HARJIT SINGH ATHWAL, MATTHEW
A. WURGAFT, KRAVIS & WURGAFT,
P.C., TREASURES LONDON LIMITED &
ANDREW KRAVIS,

                              Defendants.

No.  20-CV-10578 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Poonam Keswani, proceeding *pro se*, brings this action against Harjit Singh Athwal, Andrew Kravis, Matthew A. Wurgaft, Kravis & Wurgaft, P.C., and Treasures London Limited, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.  Plaintiff claims that Defendants' conduct in pursuing two actions against her to recover an alleged $2 million debt violated that statute's prohibitions on false representations and the use of unfair means in debt collection.  On September 14, 2021, the Court dismissed Plaintiff's original Complaint because she had failed to plausibly allege that the underlying debt was subject to the FDCPA.  Plaintiff filed an Amended Complaint on November 3, 2021 and a Second Amended Complaint on November 5, 2021.  Defendants have moved to dismiss on the same grounds.  For the reasons that follow, the motions are granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the Second Amended Complaint and assumed to be true for purposes of this motion.[1]  *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers a complaint filed against Plaintiff in the United States District Court for the District of New Jersey, which was attached to her initial complaint and is incorporated in her Second Amended Complaint by reference, and on which Plaintiff relies in raising her claims.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (explaining that courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit").  The Court further takes judicial notice of litigation in New York state court.  *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").[2]  It does not, however, assume the facts in either of those pleadings to be true.

Plaintiff Poonam Keswani, a resident of New York, is a self-described "International Humanitarian and Jeweler with a recognizable presence in the United States and overseas." Second Amended Complaint ("Compl.") ¶ 12.  Harjit Singh Athwal is a citizen of the United Kingdom and the director of Treasures London Limited ("TLL"), a United Kingdom company. *Id.* ¶¶ 6-7.  Plaintiff alleges that Athwal "in his business practices lends money and secures loans for corporate and non-corporate clients."  *Id.* ¶ 6.  Matthew Wurgaft and Andrew Kravis are

---

[1] The Court does not consider the exhibit attached to Plaintiff's Second Amended Complaint, which includes various emails sent to her by Athwal, the relevance of which are unclear.

[2] Unless otherwise noted, case quotations omit all internal quotations, citations, alterations, and footnotes.

attorneys admitted to practice law in the State of New York, and the owners of Kravis & Wurgaft,
P.C., "a professional company based in Newark, New Jersey." *Id.* ¶¶ 8-9.

In order to fully understand the allegations in Plaintiff's Second Amended Complaint, it is
necessary to discuss related allegations made against Plaintiff by Defendants in prior actions.  On
September 27, 2018, Athwal and TLL filed a suit in the United States District Court for the District
of New Jersey that named Plaintiff and her jewelry company, Treasures of Prince, LLC ("TOP"),
as defendants and demanded repayment of an alleged $2 million debt.  *Id.* ¶ 66, *see* Dkt. 1 Ex. A
("DNJ Complaint").  Athwal and TLL brought claims for, among other things, common law fraud,
breach of contract, breach of the covenant of good faith and fair dealing, and violations of the New
Jersey Consumer Fraud Act.  *See* DNJ Complaint at 22-29.  As pertinent here, Athwal and TLL
alleged that Plaintiff made herself out to be the owner of jewelry retail stores, *id.* ¶ 8, and stated to
Athwal that she was "setting up an international rough diamond business," *id.* ¶ 22.  In January
2017, Plaintiff allegedly proposed to Athwal a business opportunity involving the de-sourcing and
processing of rough diamonds.  *Id.* ¶ 46.  This prompted Athwal to create "a new Limited Company
in the UK," TLL, which made several loans to Plaintiff's entity, TOP.  *Id.* ¶¶ 47-49.  Athwal and
TLL alleged in the DNJ complaint that they did not receive a "a single dollar" of the funds that
were loaned to TOP.  *Id.* ¶ 50.

On February 8, 2019, the DNJ case was dismissed for lack of subject matter jurisdiction.
*See Treasures London Limited et al. v. Poonam Keswani et al.*, No. 18-cv-14347 (BRM) (LHG)
(D.N.J. Feb. 7, 2019).  On or about September 13, 2019, Athwal and TLL commenced another
action to recover the alleged $2 million debt, this time in New York state court.  Compl. ¶ 68.
Wurgaft and Kravis of Kravis & Wurgaft P.C. represented them in that action.  *Id.*  On July 28,
2021, the state court granted default judgment against Plaintiff, finding that according to the

allegations in the complaint and related affidavits, "Keswani personally guaranteed [Treasure of Prince's] repayment obligations" for the $2 million debt.  Kravis Dec. Ex. C.

Turning back to the pleadings before this Court, Plaintiff's Second Amended Complaint provides additional details about her and Athwal's personal relationship, most of which are not relevant.  *See, e.g.*, Compl. ¶¶ 14-29, 49-52.  More relevantly, however, she admits that Athwal gave her money for business purposes.  *See id.* ¶ 43 (discussing a "rough diamond deal" that Plaintiff was negotiating with third parties in which there were many "expenses involved" and alleging that Athwal "saw the profit margin was high so he said he doesn't mind getting involve[d] and help[ing] [Plaintiff]"); *id.* ¶ 48 (alleging that Athwal "gave [her] the money to invest in rough diamonds").  Plaintiff maintains, however, that "[a]t no time whatsoever did [Athwal] insinuate or suggest that he was loaning money to" Plaintiff or any companies associated with her; she instead appears to allege that their "position [was] that no loan ever existed" because Athwal's actions were motivated by a desire to become romantically involved with Plaintiff.  *Id.* ¶ 45.

Plaintiff further alleges that "[s]ometime in October 2017," Athwal requested from her "a personal guarantee for almost $2.5 million."  *Id.* ¶ 57.  Athwal explained that he needed the guarantee because he was in financial "trouble and on an emergency to file a bankruptcy," and that a guarantee would "buy him some time to arrange funds."  *Id.* ¶ 58.  Plaintiff responded that she did not "know how to make a personal guarantee"; Athwal told her that he would prepare and email the necessary papers.  *Id.* ¶ 60.  Plaintiff asked Athwal whether the guaranty could ever "put [her] in trouble" or whether he could ever "use [it] against" her; he reassured her that he would not do so.  *Id.* ¶ 61.  Out of sympathy for Athwal and for the sake of their friendship, she gave him the guarantee "with the faith that he would never use" it against her.  *Id.* ¶ 62.  But shortly after Athwal received the guarantee, he "began bragging to his friends that he was going to destroy [her] since

4

[she] refused to be in a relationship with him and that he would not rest until [she] was 6 FEET UNDER THE GROUND." *Id.* ¶ 63. "From this vicious crucible of vengeance," Plaintiff asserts, "emerged the numerous frivolous and attritional law suits [Athwal] filed against" her in New Jersey federal court and New York state court. *Id.* ¶ 64.

Plaintiff disputes the allegations in the District of New Jersey and New York cases, asserting that Defendants "deceptively and falsely swore . . . that the amount they were seeking was accurate although they knew that no such debt of that amount was ever incurred by Plaintiff." *Id.* ¶ 69. She further asserts that Defendants have "maliciously published false information about [her] in the financial circles which has caused her denial of credit, untold economic hardship, loss of business negotiations and lucrative contracts and strangulation, though unimaginable attorney fees," ultimately forcing her into bankruptcy. *Id.* ¶¶ 71-73.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "Where, as here, the complaint was filed *pro se*, it must be construed liberally with special solicitude and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

**DISCUSSION**

I.      **Whether Plaintiff States a Claim Under the FDCPA**

The relevant provisions of the FDCPA apply only to consumer debts, which are defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).  In its prior opinion, the Court explained that Plaintiff had pleaded insufficient facts from which the Court could infer that the subject debt was a consumer debt, as opposed to a commercial debt, which the FDCPA does not cover. *See Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102 (2d Cir. 2016) ("The FDCPA does not cover actions arising out of commercial debts."); 2021 Opinion at 6 (concluding that the original "Complaint contains virtually no factual allegations about the nature of the debt that Defendants sought to collect from her" such that the Court could not "reasonably infer that the debt arose from a transaction that was primarily for personal, family, or household purposes, as required to state a claim under the FDCPA").

Plaintiff's Second Amended Complaint suffers from the same deficiency, as it does not provide any non-conclusory allegations that the purported debt is consumer in nature.  Indeed, the additional information that Plaintiff does provide in her Second Amended Complaint about the money Athwal gave her and about the personal guarantee she signed only enhance the Court's concerns that the subject debt is a commercial debt that is not covered by the FDCPA.  The money that Athwal gave Plaintiff and/or her company in connection with her rough diamond business—whether styled as a loan or a gift—would have been for Plaintiff's commercial or business use, not for her personal, family, or household use.  The same is true of the debt that Plaintiff personally guaranteed.  Because Plaintiff has incorporated the guarantee into her Second Amended Complaint

6

by reference, the Court may consider the copy of that document that Defendants included in their initial motions to dismiss. *See Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). In that guarantee, which was made between Plaintiff and TLL "in respect of the account(s) and liabilities of [her company] Treasures of Prince, LLC," Plaintiff agreed to "unconditionally and irrevocably guarantee[] payment to [TLL] on demand of all Guaranteed Liabilities"; that is, on any money that TOP owed to TLL. Kravis Dec. Ex. A. Given the commercial character of these entities and the commercial nature of the dealings between them, this document further supports the conclusion that Plaintiff's alleged debt was incurred in connection with a commercial transaction. *See* Compl. ¶ 57 (alleging that Athwal told Plaintiff that he needed the guarantee because "he used some of his client's funds for the rough diamond deal" and those funds had been "lost"). Accordingly, the Court still cannot reasonably infer that Plaintiff's alleged debt arose from a transaction that was primarily for "personal, family, or household purposes," as required to state a claim under the FDCPA. 15 U.S.C. § 1692a(5).

## II.    Leave to Amend

Although amendment should be freely granted—especially to *pro se* parties—it "should be denied if there is . . . [a] repeated failure to cure deficiencies by amendments previously allowed" or if the "futility of amendment" is clear. *Dluhos v. Floating and Abandoned Vessel, known as New York*, 162 F.3d 63, 69 (2d Cir. 1998); *see In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007) (describing a prior denial of "leave to amend because of the plaintiffs' failure to cure deficiencies, despite notice and an opportunity to do so, as well as [their] failure to show how any amended complaint could cure the deficiencies"). Here, Plaintiff has failed to cure the pleading deficiencies the Court identified; nor has she stated what further facts she would plead if

given another opportunity to amend.  Moreover, for the reasons explained above, Plaintiff almost certainly cannot plead additional facts that would both be consistent with her current allegations and that would show that the subject debt is consumer in nature.  *See Margel v. E.G.L. Gem Lab Ltd.*, No. 04-cv-1514 (PAC) (HBP), 2010 WL 445192, at *4 (S.D.N.Y. Feb. 8, 2010) (explaining that leave to amend may "be denied as futile if . . . there is no set of facts consistent with the allegations in the complaint which would entitle plaintiff to relief").  Accordingly, leave to amend is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted and this case is dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the motions at dockets 30 and 34, close this case, and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated:     April 14, 2022
           New York, New York

                                          _____
                                          Ronnie Abrams
                                          United States District Judge

8